UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
JOANA RODRIGUEZ DOMINGUEZ,                                :
                                                          :  **MEMORANDUM DECISION AND**
                                    Plaintiff,            :  **ORDER**
                                                          :
            - against -                                   :  23-cv-8396 (BMC)
                                                          :
TARGET CORPORATION, FOREST                                :
AVENUE PLAZA 1343, LLC, and KIMCO                         :
STATEN ISLAND SS 1343 INC.,                               :
                                                          :
                                    Defendants.           :
                                                          :
----------------------------------------------------------X

**COGAN**, District Judge.

In this slip and fall action removed from state court purportedly on the basis of diversity jurisdiction, defendant Target Corporation's notice of removal acknowledges that, as pled, there is no diversity because the two other defendants, Forest Avenue Plaza 1343, LLC and Kimco Staten Island, LLC, are New York citizens. It alleges, however, that these two defendants were fraudulently joined to prevent removal, and their citizenship should therefore be disregarded. Having reviewed the parties' submissions on the issue, I direct plaintiff to file an amended complaint.

## BACKGROUND

The state court complaint is typical of the boilerplate, inconsistent, and conclusory pleadings used in state court personal injury actions.  It alleges that Target is either a domestic or foreign corporation subject to personal jurisdiction in New York; and that with regard to the premises located at 1520 Forest Avenue in Staten Island, it either owned them; was a lessee or a lessor; that it maintained them; that it "managed" them; that it "controlled" them; that it

"operated" them; that it "supervised" them; and/or that it "inspected" them. The complaint then proceeds to make the identical allegations against Forest Avenue. It then proceeds to make the identical allegations against Kimco.

Then, treating defendants as a group, it alleges that plaintiff slipped and fell, and that her injuries were "were due solely and wholly as a result of the careless and negligent manner in that the defendants owned, operated, maintained, managed and controlled the aforesaid premises, without the plaintiff in any way contributing thereto." Rounding out the conclusory allegations, it alleges

> that the defendants herein were negligent, reckless and careless in that they violated their duties to persons on the aforesaid premises and to this plaintiff in particular, in knowingly permitting, suffering and allowing the aforesaid to be, become and remain in a defective, unsafe and dangerous condition, and were further negligent in failing to take suitable precautions for the safety of persons lawfully on the aforesaid premises.

That's all the complaint says about why any of defendants are liable in this case.

In its notice of removal, Target recognizes the problem of having two New York citizens (Forest and Kimco) on the opposite side of the caption from a New York plaintiff. It asserts, however, that

> Target was solely responsible to maintain the interior of the premises. Forest Avenue and Kimco had no responsibility with regard to a transient water condition on the floor inside of Target. Forest Avenue and Kimco are out-of-possession landlords that did not, and have no obligation to operate, maintain or repair any portion of the interior of the premises. Specifically, Forest Avenue and Kimco have no obligation to clean a transient water condition from the floor.

Target has submitted a copy of the incident report from plaintiff's slip and fall which contains a statement from plaintiff that the floor was wet as a result of bringing in shopping carts from the rain. Target has also submitted a copy of the lease between it and Forest, which requires Target to keep and maintain the premises in a "neat, clean, orderly and sanitary condition and repair." The landlord, Forest, is only charged with maintaining improvements to the land, structural

components of the building, the roof, and exterior walls. Accordingly, Target contends, since neither Forest nor Kimco can have any liability for plaintiff's slip and fall, they are not proper parties to this action, and their citizenship should be disregarded for purposes of removal.

## DISCUSSION

A party seeking to remove an action bears a "heavy burden" to prove the Court's subject matter jurisdiction. Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296 (2d Cir. 2004). Federal courts must "scrupulously confine their own jurisdiction," Durove v. Fabian Transport Inc., 04-cv-7000, 2004 WL 2912891, at *1 (S.D.N.Y. Dec. 10, 2004) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941)), and factual and legal ambiguities must be resolved in favor of plaintiff. It is not enough to suggest that plaintiffs' motive in joining a non-diverse defendant was to thwart removal; defendants must establish "by clear and convincing evidence" that plaintiff cannot state a cause of action in state court. Arsenault v. Congoleum Corp., 01-cv-10657, 2002 U.S. Dist. LEXIS 5084, at *17 (S.D.N.Y. Mar. 26, 2002) ("A motive to prevent removal, by itself, does not render the joinder of a defendant fraudulent for removal purposes.") (citing Illinois Cent. R.R. Co. v. Sheegog, 215 U.S. 308, 316 (1909)).

In Pampillonia v. RJR Nabisco. Inc., 138 F.3d 459 (2d Cir. 1998), the Second Circuit outlined the standard for establishing fraudulent joinder of a non-diverse party: defendants seeking removal must demonstrate "by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." Id. at 460-61. "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." Id. The rationale for the rule is clearly to prevent plaintiffs from defeating a federal court's diversity

3

jurisdiction and frustrating a defendant's right of removal "by merely joining as defendants parties with no real connection with the controversy." Id.

Courts have offered various interpretations of Pampillonia's "no possibility" test. Some have inserted the word "reasonable," making it "no reasonable possibility," or have changed it to "no reasonable basis." In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272, 280 (S.D.N.Y. 2001). These courts reason that the "no possibility language cannot be taken literally because then no case would meet the standard for fraudulent joinder." Id. at 280. Other courts, however, apply the phrase literally. Arseneault, 2002 U.S. Dist. LEXIS 5084, at *5 (suggesting that "the Court [of Appeals in Pampillonia] did not inadvertently use the language it did based on tests from other circuits which specifically reflect the "no possibility" formulation); see also Nemazee v. Premier, Inc., 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002) ("[a]ny possibility of recovery, even slim, militates against a finding of fraudulent joinder"); Sonnenblick-Goldman Co. v. ITT Corp., 912 F. Supp. 85 (S.D.N.Y. 1996) ("In evaluating the existence of fraudulent joinder, the Court must determine whether the mere possibility exists that plaintiff can establish any cause of action against a defendant.").

I believe that the Second Circuit's holding should be applied literally. There is nothing ambiguous about the language of Pampillonia. The "no possibility" test requires the Court to determine that plaintiff has no claim as a matter of law. It does not envision a weighing of conflicting evidence to determine how likely it is that plaintiff will ultimately recover. Moreover, literal application of the "no possibility" standard is fully consistent with the narrow construction that courts have placed on the right to remove. In addition, the Second Circuit's adoption of a "clear and convincing evidence" standard, the highest standard of proof that the law imposes in civil cases, see e.g., Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 22 n. 11

4

(1991); Addington v. Texas, 441 U.S. 418 (1979), demonstrates how stringent it intended to make the "no possibility" test.

Contrary to those cases holding that literal adherence to the standard would render it meaningless, it is commonplace for claims to fail as a matter of law in federal court, and for that to be apparent to the court at the outset. Removed cases are no different. Cases against non-diverse defendants that fail to meet the standard of Rule 12(b)(6) present "no possibility" that plaintiff will recover; so do cases that are barred by statutes of limitation, *res judicata*, or many other affirmative defenses. See In re Briscoe, 448 F. 3d 201 (3d Cir. May 15, 2006); Richey v. Upjohn Drug Co., 139 F. 3d 1313, 1319 (9th Cir. 1998); Green v. Amerada Hess Corp., 707 F. 2d 201 (5th Cir. 1983). Even if a removing defendant cannot obtain dismissal under Rule 12(b), many if not most claims that fail under Rule 56 will also present "no possibility" of recovery.

In approaching the issue from this perspective, I have focused on the Second Circuit's reliance on cases from other circuits that have also adopted the "no possibility" standard. See Pampillonia, 138 F.3d at 461. Some of those circuits have referred to a "summary judgment-like" standard, see e.g., Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, 99 F.3d 746 (5th Cir. 1996), which I believe is appropriate as the outer boundary of the "no possibility" test (Rule 12(b)(6) being the inner boundary). This is because it would be anomalous for a court to find that a defendant was joined as a "sham," and nevertheless find that, despite the sham, it lacks any mechanism under the Federal Rules to dismiss that defendant. If anything, to the extent there is a difference between the "no possibility" test and the standard for summary judgment under Rule 56, the former should be applied even more broadly, since there is no determination of substantive rights involved, but merely a question of forum selection.

Thus, cases like this, where the facts relating to the merits of the claim are solely within the knowledge of the removing party, may be poor candidates for a court to find a sham removal.

Here, the parties agree that the general rule in New York is that an out-of-possession landlord has no liability for the tenant's failure to maintain the premises, particularly where, as here, the lease places that responsibility squarely on the tenant. See e.g. King v. Marwest. LLC, 192 A.D.3d 874, 876, 143 N.Y.S.3d 673, 676 (2nd Dep't 2021). Plaintiff, however, notes an exception to this rule: if the landlord actually performs maintenance notwithstanding the lack of an obligation to do so under the lease, it can be liable in negligence. See Gronski v. County of Monroe, 18 N.Y.3d 374, 940 N.Y.S.2d 518 (2011). Plaintiff's point is simple – how can she know the extent of Forest's assumption of responsibilities without discovery? Indeed, plaintiff goes so far as to suggest that because it is standard in New York premises liability cases to sue both the landlord and the tenant, an attorney's failure to join the landlord might be viewed as professional malfeasance if it is later discovered – say, after the expiration of the statute of limitations – that the landlord had assumed actual control of the premises.

But plaintiff has a bigger problem. Whatever the pleading standard under the C.P.L.R. is for an adequate personal injury complaint, the instant complaint does not come close to meeting the pleading standards required by Ashcroft v. Iqbal, 556 U.S. 544 (2009), and Bell Atl. v. Twombly, 550 U.S. 544 (2007). All the state court complaint does is to assert that defendants as a group were "negligent" in some undefined way and that plaintiff was injured as a result. These are the classic conclusory allegations that are insufficient under federal law.

Based on the submissions before me, it seems that plaintiff may be able to assert a plausible claim against Target. The fact that plaintiff is ascribing her injury to an insufficiently mopped floor as a result of shopping cart drippage (not in the complaint, but in the incident

6

report), and that the lease places the responsibility for that on Target, not the landlord, may suffice to allege a plausible claim against Target.

With regard to Forest and Kimco, plaintiff has still not given me a hint about what they did wrong that constitutes negligence. It is not sufficient for plaintiff to say, "I don't know yet; I need discovery." Given the lease, which creates a *prima facie* showing that only Target is responsible, plaintiff needs some plausible basis for thinking that Forest and Kimco ignored the terms of the lease and took on the maintenance obligation themselves.  An investigator might be able to gather such information if it exists.  And if it cannot, I do not see a reasonable possibility of exposure to plaintiff's counsel for having failed to plead claims against Forest and Kimco that could not be pled in good faith.

Under Fed. R. Civ. P. 81(c)(2), this situation seems an appropriate one in which to order plaintiff to file an amended complaint that states a claim. She must state a plausible claim against Target based on the information set forth above.  She also may, if she is so disposed, attempt to state a claim against Forest and Kimco, although her claims at this point will all be subject to review under Rule 11. If she states a plausible claim against Forest and Kimco, the case will be remanded to state court.  If she abandons that effort or fails to succeed at it, those defendants will be dismissed on the merits and the case will remain here.

Any amended complaint from plaintiff shall be filed within 21 days.

**SO ORDERED.**

Dated: Brooklyn, New York
      December 4, 2023

*Brian M. Cogan*
_____
U.S.D.J.

7